UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

JAMES L. KIRK,

    Plaintiff,

v.

TAMMI MAASSEN, W. BRAD MARTIN, DEBRA TIDQUIST, CHERYL MARSOLEK, and GEORGIA KOSTOHYZ, sued in their individual capacities,

    Defendants.

Case No.: 3:18-cv-00110-bbc

JURY TRIAL DEMANDED

---

### FIRST AMENDED COMPLAINT

---

    1.    This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983 for damages and injunctive relief stemming from the Defendants' deliberate indifference to the Plaintiff's serious medical needs, which caused harm to Plaintiff.

    2.    Defendants' knowing disregard of Plaintiff's cardiac chest pain and their failure to provide timely diagnosis and treatment caused Plaintiff permanent damage to his heart and severe pain. Defendants' deliberate indifference to Plaintiff's serious medical needs is ongoing.

### JURISDICTION AND VENUE

    3.    This Court has jurisdiction over the subject matter of this Complaint pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), and 1367(a).

    4.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2), as the events and omissions giving rise Plaintiff's claims occurred in the Western District of Wisconsin.

### PARTIES

5. Plaintiff, James L. Kirk, was incarcerated at Jackson Correctional Institution ("JCI") in Black River Falls, Wisconsin, during the events described in this Complaint.

6. Defendant, Tammi Maassen, was the Health Services Unit ("HSU") Supervisor at JCI at all times relevant to this Complaint. She was employed by the State of Wisconsin in the Department of Corrections ("DOC") and is sued in her individual capacity.

7. Defendant, W. Brad Martin, was a Medical Doctor at JCI at all times relevant to this Complaint. He was employed by the State of Wisconsin in the DOC and is sued in his individual capacity.

8. Defendant, Debra Tidquist, was a Nurse Practitioner at JCI at all times relevant to this Complaint. She was employed by the State of Wisconsin in the DOC and is sued in her individual capacity.

9. Defendant, Cheryl Marsolek, was a Registered Nurse at JCI at all times relevant to this Complaint. She was employed by the State of Wisconsin in the DOC and is sued in her individual capacity.

10. Defendant, Georgia Kostohyz, was a Registered Nurse at JCI at all times relevant to this Complaint. She was employed by the State of Wisconsin in the DOC and is sued in her individual capacity.

11. The Defendants acted in concert and are jointly and severally liable for the harm caused to Plaintiff.

## FACTS

12. Prior to Plaintiff's incarceration, his medication regimen was well controlled, he was able to walk short to medium distances, he experienced low fatigue, he was comfortable at rest and performing light activities, and he slept well at night.

13. On October 20, 2015, Dr. Martin prescribed a diuretic for Plaintiff. However, Plaintiff continued to complain to Dr. Martin of shortness of breath.

14. On November 10, 2015, Dr. Martin ordered an echocardiogram ("ECG") for Plaintiff, which showed a left ventricle ejection fraction of 40 percent.

15. On December 30, 2015, Plaintiff complained to Ms. Tidquist of shortness of breath with activity.

16. On February 1, 2016, Ms. Tidquist changed Plaintiff's medication regimen pursuant to recommendations from Dr. Ward M. Brown, who had seen Plaintiff for a cardiac consult at Black River Falls Memorial Hospital ("BRFMH").

17. Neither Dr. Martin nor Ms. Tidquist ever contacted Plaintiff's cardiologist to determine Plaintiff's medication regimen prior to his incarceration.

18. On March 3, 2016, Plaintiff complained to Ms. Kostohyz of shortness of breath. Plaintiff indicated he could breathe more easily before his medication regimen was changed. Ms. Kostohyz told Plaintiff he was not having difficulty breathing and sent Plaintiff back to the housing unit.

19. On June 4, 2016, Plaintiff complained to Ms. Marsolek of shortness of breath. On June 6, 2016, Plaintiff made the same complaint to Ms. Tidquist, who changed Plaintiff's medication regimen again.

20. On June 21, 2016, Plaintiff complained to Dr. Martin of periodic chest pain and shortness of breath. Dr. Martin changed Plaintiff's medication regimen once more.

21. On July 13, 2016, Plaintiff complained to Ms. Kostohyz and Ms. Marsolek of shortness of breath and worsening chest pain. They performed an electrocardiogram ("EKG") of Plaintiff.

22. The records of the EKG stated "inferior infarct" and "consider ischemia."

23. Nonetheless, Ms. Kostohyz informed Plaintiff that the EKG revealed no blockages and that his chest pain was caused by old age. Ms. Marsolek told Plaintiff his chest pain may be caused by the weather.

24. Ms. Kostohyz rescinded Plaintiff's wheelchair authorization for distance and said he did not need a cane. Plaintiff continued to complain of shortness of breath and complained of spine problems.

25. Ms. Marsolek directed Plaintiff back to the housing unit, despite Plaintiff continuing to complain of chest pain.

26. Ms. Kostohyz and Ms. Marsolek failed to disclose the accurate results of the EKG to Plaintiff, made statements to Plaintiff about his condition that directly contradicted the results of the EKG, and returned Plaintiff to the housing unit in pain from the blockages revealed by the EKG.

27. On July 14, 2016, Plaintiff complained to Dr. Martin and Ms. Tidquist of pain above his heart, similar to the pain he felt before previous heart attacks. Plaintiff begged to be taken to the hospital and asked to be placed on a waiting list for a heart transplant.

28. Dr. Martin and Ms. Tidquist refused to transfer Plaintiff to the hospital, denied his request for a heart transplant, failed to disclose the results of the EKG to Plaintiff, and returned Plaintiff to the housing unit despite his continued complaints of chest pain.

29. On July 19, 2016, Plaintiff complained to HSU of chest pain and difficulty breathing and presented information from the Social Security Administration regarding his heart issues.

30. On July 20, 2016, Ms. Marsolek asked Plaintiff about the significance of the information he presented from the Social Security Administration. Plaintiff responded that HSU has failed to treat his congestive heart failure, failed to contact his regular cardiologist, and failed to treat his chest pain.

31. Ms. Marsolek admitted that Plaintiff had been complaining of chest pain for months and asked him what he would like her to do about it. Plaintiff again requested to be transferred to a hospital. Despite knowing the results of the EKG, Ms. Marsolek refused and angrily returned Plaintiff to the housing unit without referring him for treatment or taking his vital signs.

32. On July 26, 2016, Plaintiff's mother called HSU, informed them of Plaintiff's history of heart attacks and stroke, and asked that Plaintiff be transferred to a hospital.

33. Instead, Kristine Pralle, a Registered Nurse at JCI, saw Plaintiff. She asked Ms. Tidquist whether she could administer Nitro to Plaintiff, and Ms. Tidquist said no.

34. On July 28, 2016, Ms. Tidquist sent Plaintiff to BRFMH for a spirometry test. The results showed that Plaintiff had mild obstructive pulmonary defect, not chronic obstructive pulmonary disease ("COPD").

35. On August 10, 2016, Ms. Tidquist misinformed Plaintiff that he had COPD and gave him an inhaler. Plaintiff insisted his heart, not his lungs, was causing him pain. Ms. Tidquist nonetheless returned Plaintiff to the housing unit despite his continued complaints of chest pain.

36. On August 13, 2016, Plaintiff wrote to Ms. Maassen and requested permanent wheelchair authorization as a result of his heart condition. Ms. Marsolek intercepted the request and informed Plaintiff he did not meet the criteria for wheelchair authorization.

37. On August 22, 2016, Plaintiff wrote to HSU advising that he has congestive heart failure and coronary artery disease. He complained of chest pain above and at his heart, left arm

pain, and weakness in his legs. Plaintiff stated that his chest pain had worsened since he had been given an inhaler.

38. On August 27, 2016, Plaintiff submitted another request to HSU to be seen at a hospital for his chest pain. He advised that his left shoulder and arm continued to hurt and his legs continued to tingle.

39. On September 6, 2016, Plaintiff fell to the ground after experiencing severe chest pain and lightheadedness. He was taken to BRFMH and subsequently flown to Gundersen Lutheran Medical Center ("GLMC").

40. After receiving a cardiac catheterization and angiography, Plaintiff was told by a treating physician that a lot of blockages were undone.

41. Upon Plaintiff's arrival at JCI, Ms. Pralle viewed a photo of Plaintiff's heart that had been taken at GLMC and noted a dark spot where she said the blockages must have been.

42. On September 8, 2016, Plaintiff told Ms. Tidquist that the blockages had been opened and his chest pain was gone.

43. Ms. Tidquist denied that there ever were blockages in Plaintiff's heart, notwithstanding the results of the EKG and the photographs of his heart. Ms. Tidquist denied that the treating physicians at GLMC did anything besides start him on a new medication.

44. On September 21, 2016, Plaintiff complained to Ms. Tidquist of ringing in his ears, headaches, and numb hands and feet when laying on his side or stomach.

45. In a note dated September 23, 2016, Ms. Maassen confirmed that Plaintiff was to return to GLMC one month after the procedure for a follow-up with a nurse practitioner specializing in cardiology.

46. Ms. Tidquist refused to send Plaintiff to GLMC. As a result, Plaintiff was unable to obtain information relevant to his medical condition and learn the extent of the damage caused by the Defendants' failure to timely diagnose and treat Plaintiff.

47. Instead, Ms. Tidquist sent Plaintiff to Dr. Brown, to whom Plaintiff reiterated his complaints of numbness in his arms and legs when laying on his stomach or side, headache, ringing in his ears, and fatigue.

48. On August 22, 2017, Dr. Martin removed an ingrown toenail from Plaintiff. As a result, Plaintiff's toe became infected. Dr. Tidquist prescribed medication that did not heal Plaintiff's toe.

49. On November 27, 2017, Plaintiff complained to HSU of continued ringing in his ears and poor circulation preventing his infected toe from healing. On December 10, 2017, Plaintiff reiterated his request for treatment and adding that he had been experiencing heart pain for a couple days.

50. On December 12, 2017, Plaintiff complained to Dr. Martin of poor circulation, ringing in his ears, pain in his ankles, numbness in his hands and feet, chest pain, and fatigue. Dr. Martin declined to perform a stress test or ECG and failed to listen to Plaintiff's heart or address his chest pain in any way. Plaintiff was returned to the housing unit with his complaints unresolved.

51. On December 21, 2017, Plaintiff complained to Cecilia Hutchenson-Smith, a Registered Nurse at JCI, of worsening symptoms, including chest pain, ringing in his ears, numb hands and feet, pain in his ankles, and extreme fatigue. Plaintiff believed his symptoms were adverse reactions to medication.

52. Despite Plaintiff's complaints of ischemia, blockages and chest pain for approximately 10 weeks and their knowledge of Plaintiff's EKG results, the Defendants failed to

address Plaintiff's symptoms, causing Plaintiff to fall to the ground with severe chest pain and lightheadedness, severely damaging Plaintiff's heart. The Defendants' conduct has caused Plaintiff chest pain, numbness, pain in his ankles, ringing in his ears, fatigue, headache, lightheadedness, and emotional distress. As a result of the Defendants' refusal to afford Plaintiff the treatment to which he is entitled, the extent of Plaintiff's damages remains unknown.

53. Plaintiff has exhausted his administrative remedies.

54. Plaintiff has addressed each of his issues with Ms. Maassen, who failed to provide diagnostic testing, treatment, or hospital care for his serious medical needs.

55. Specifically, Plaintiff complained to Ms. Maassen in written correspondence dated July 7, 2016, July 20, 2016, August 13, 2016, August 23, 2016, September 1, 2016, September 20, 2016, September 21, 2016, October 1, 2016, October 3, 2016, October 7, 2016, and November 15, 2017, complaining of pain, reporting inadequate medical care and refused treatment, seeking care, and requesting information. Each time, Ms. Maassen refused or ignored Plaintiff's requests.

56. Ms. Maassen maintains a custom or policy of denying inmates adequate medical care in violation of the Eighth Amendment to the United States Constitution.

## COUNT ONE
## VIOLATION OF 42 U.S.C. § 1983

57. The Defendants, employees of the DOC, knew of Plaintiff's serious medical needs related to his heart condition. The Defendants knew of Plaintiff's history of heart attacks and stroke and that Plaintiff had been diagnosed with congestive heart failure, coronary artery disease, ischemia, and blockages. The Defendants also knew of the results of the July 13, 2016 EKG.

58. Plaintiff repeatedly complained to the Defendants of symptoms related to his serious medical needs, including cardiac chest pain, shortness of breath, headache,

lightheadedness, numbness in his extremities, arm, shoulder and ankle pain, fatigue, ringing in his ears, and poor circulation.

59. Plaintiff's medical condition and related symptoms significantly affected his performance of daily activities and left him in chronic and serious pain.

60. Plaintiff made efforts to notify the Defendants and report his conditions.

61. At all relevant times, it was obvious to the Defendants that Plaintiff was in need of hospitalization and/or critical medical care.

62. Despite their knowledge of Plaintiff's serious medical needs, the Defendants acted with deliberate indifference toward those serious medical needs by:

   a. knowingly disregarding Plaintiff's serious medical needs and failing to respond reasonably to them;

   b. refusing Plaintiff's requests for diagnostic testing, treatment and care;

   c. ignoring and failing to treat Plaintiff's serious medical needs;

   d. intentionally denying and delaying Plaintiff's access to treatment;

   e. refusing Plaintiff's requests for hospitalization;

   f. intentionally interfering with treatment ordered by Plaintiff's doctors;

   g. changing Plaintiff's successful medication regimen; and

   h. aggravating and worsening Plaintiff's serious medical needs.

63. The Defendants' deliberate indifference to Plaintiff's serious medical needs caused Plaintiff harm, including physical and psychological damage, further significant injury, and unnecessary and wanton infliction of pain and suffering, in violation of the Eighth Amendment to the United States Constitution.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the following relief:

a. Issue an injunction ordering the Defendants to provide Plaintiff with proper medical care;

b. Order Ms. Maassen to transfer Plaintiff to an independent medical provider for complete diagnosis and treatment of Plaintiff's medical condition;

c. Compensatory damages in an amount to be determined at trial;

d. Punitive damages in an amount to be determined at trial;

e. Reasonable attorneys' fees and costs; and

f. Such other and further relief as the Court deems just.

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY.**

DATED: May 26, 2020

Respectfully submitted,

HUSCH BLACKWELL LLP

By: */s/ Jacob B. Harris*
Paul D. Cranley, State Bar #1050029
Jacob B. Harris, State Bar #1095224
Attorneys for Plaintiff

33 E. Main Street, Suite 300
P.O. Box 1379
Madison, Wisconsin 53701-1379
Telephone: 608.255.4440
Fax: 608.258.7138
Email: paul.cranley@huschblackwell.com
Email: jacob.harris@huschblackwell.com